IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HOLY CROSS HOSPITAL, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> AMERICAN ANESTHESIOLOGY SERVICES OF FLORIDA, INC., AMERICAN ANESTHESIOLOGY, INC., NMSC II, LLC and NORTH AMERICAN PARTNERS IN ANESTHESIA, L.L.P., <br><br> Defendants/Counterclaim-Plaintiffs. | Civil Action No.: 0:24-cv-60315-Leibowitz/Strauss |
| AMERICAN ANESTHESIOLOGY SERVICES OF FLORIDA, INC., <br><br> Counterclaim-Plaintiff, <br><br> v. <br><br> HOLY CROSS HOSPITAL, INC., <br><br> Counterclaim-Defendant. | |

**HOLY CROSS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS**

I. **INTRODUCTION**

American Anesthesiology's Response in Opposition to Holy Cross' Motion to Dismiss Second Amended Counterclaims and Incorporated Memorandum of Law (the "Response") (ECF No. 46) merely confirms that its Second Amended Counterclaims ("SAC") fail to supply sufficient factual allegations to support their legal conclusions. Indeed, the Response fails to squarely address the vast majority of the arguments contained in Holy Cross' Motion to Dismiss Second Amended Counterclaims and Incorporated Memorandum of Law (ECF No. 37).

1

56207173.9

## II. AMERICAN ANESTHESIOLOGY STILL HAS NOT PLAUSIBLY ALLEGED A LEGITIMATE BUSINESS INTEREST

As explained in Holy Cross' initial motion, "[a]ny restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Fla. Stat. § 542.335(1)(b). The Response does not identify factual allegations in the SAC that meet this requirement.

### A. The Arguments in the Response Regarding Referral Relationships are Insufficient

The arguments in the Response regarding referral relationships are inadequate. The statute spells out specific criteria that meet the "legitimate business interest" test. It references customers, but not referrals. The Florida Supreme Court has held that "special facts" are necessary to support any other justifications, including referrals. *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 785 (Fla. 2017), ECF No. 37 at p.12.

The Response never addresses this requirement in *White*. Nor does it identify any "special facts" in the SAC that would make referral relationships a legitimate business interest here. In particular, the Response does not identify any facts in the SAC that indicate that the alleged relationships possessed by the anesthesia providers actually affect patient choices. Nor does the Response deny that the exclusive contract alleged in the SAC, not alleged referral relationships, determined where patients were treated. *See* ECF No. 37 at pp.12-13. Finally, the Response does not address the case law cited by Holy Cross, ECF No. 37 at pp.10-11, establishing that allegations of customer relationships must identify the specific customers. By analogy, even if allegations regarding referral relationships were sufficient here, American Anesthesiology would need to identify those specific referral sources. The Response is silent regarding these critical flaws.

The cases cited in the Response are not to the contrary. *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So.2d 591 (Fla. 3d DCA 2004) did not describe the evidence that was deemed sufficient with regard to referral relationships. *Ansaarie v. First Coast*

2

*Cardiovascular Inst., P.A.*, 252 So.3d 287 (Fla. 1st DCA 2018), specifically referenced evidence "that many existing patients had asked to have their files transferred to Dr. Ansaarie's practice." *Id.* at 290. The court also stated that the evidence supported the conclusion that the group seeking enforcement of the covenant made efforts which "generated a substantial patient base." *Id.* at 291. There is certainly nothing like those facts alleged here.

The only support the Response offers for the SAC's allegations is a red herring, already addressed in Holy Cross' initial brief (ECF No. 37 at p.13): The Counterclaims' discussion of the disruption that would occur if all of Holy Cross' anesthesia providers were replaced "en masse."[1] But what would happen in such an extreme event says nothing about ordinary daily referral relationships.

The Response also argues (for the first time, and contrary to the SAC) that American Anesthesiology's customers are "Holy Cross and its agents . . ." ECF No. 46 at p.10. But this allegation makes no sense. Since the contract with Holy Cross is expiring, there will be no customer relationship which the nonsolicitation clause would preserve.

The Response then attempts to shift focus to the "goodwill" associated with its "investment in the development of its anesthesiology group, its maintenance of its reputation in the community, and the investment in recruiting, training, and retaining the Clinicians." (*Id.* at 11.) But these "investments" have nothing to with *customer* goodwill—the only goodwill recognized as protectable under Florida law. *See* Fla. Stat. § 542.335(1)(b)(4).

---

[1] Notably, American Anesthesiology's Answer denies this allegation. Moreover, it refers to it as a legal assertion, not a fact. (Answer, ECF No. 36 at ¶49.)

### B. American Anesthesiology Does Not Plausibly Allege "Training" as a Legitimate Business Interest

American Anesthesiology acknowledges that it must allege that in order to qualify as a legitimate business interest, training must not be "usual, regular, common, or customary." (ECF No. 46 at 11.) But the conclusory assertion that American Anesthesiology has "invested" in a "highly skilled, specialized team," *id.*, is not the same thing as "extraordinary" or unusual training. The Response fails to identify any facts in the SAC that plausibly indicate that what American Anesthesiology does is any different than what is offered by other anesthesia providers.

All the Response can say is that **Holy Cross** has not established that NAPA's training is "common in the industry." (*Id.*) But it is American Anesthesiology's burden to plausibly allege how the "training" it provides is ***not*** "ordinary" or "common." It fails to identify any factual allegations that do so.

*Balasco v. Gulf Auto Holding, Inc.*, 707 So.2d 858, 860 (Fla. 2d DCA 1998), presents facts totally distinct from those alleged in the SAC. In *Balasco*, the plaintiff presented evidence that it "hires personnel with little or no sales experience and invests considerable money and time to teach them the Courtesy way of selling cars." "[W]hen productive associates leave they are replaced with 'raw recruits' who may take up to six months to develop." *Id.* Taking "raw recruits" with no knowledge of a business and training them for six months may be extraordinary and uncommon. Providing an undefined amount of additional quality training to highly educated anesthesiologists and CRNAs is not at all comparable.

These deficiencies are fatal to American Anesthesiology's claim. *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.*

### C. The Decisions in Syracuse

Attached for the Court's reference are two recent decisions in *St. Joseph's Hospital Health Ctr. v. American Anesthesiology of Syracuse, P.C. et al.*, No. 5:24-cv-276 (N.D.N.Y. May 16, 2024), denying a temporary restraining order and preliminary injunction sought by American Anesthesiology's parent, North American Partners in Anesthesia. *See* Exs. 1 and 2. In these decisions, Chief Judge Sannes rejected legal arguments similar to those that American Anesthesiology makes here. Significantly, the general principles under Florida and New York law are similar with regard to the legitimate business interest analysis. *Compare* Fla. Stat. § 524.335(1)(b) (recognizing a legitimate business interest in "trade secrets," "confidential business or professional information," "extraordinary or specialized training," and "substantial relationships" or "goodwill" associated with "customers, patients, or clients") *with BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (N.Y. 1999) (recognizing a legitimate business interest in customer goodwill, "protection against misappropriation of the employer's trade secrets or of confidential customer lists, or protection from competition by a former employee whose services are unique or extraordinary.").

### III. AMERICAN ANESTHESIOLOGY HAS NOT ALLEGED THAT THE NONSOLICITATION CLAUSE WAS "REASONABLY NECESSARY"

As Holy Cross also explained in its initial brief (ECF No. 37 at pp.17-18), the party seeking enforcement of a restrictive covenant "also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction." Fla. Stat. § 542.335(1)(c). Holy Cross explained that there are no allegations in the SAC addressing this critical requirement. The Response completely fails to address this issue. The phrase "reasonably necessary" does not even appear in the Response.

5

Holy Cross also explained that a restrictive covenant can only be reasonably necessary if it protects against unfair competition. ECF No. 37 at p.18. Yet, as Holy Cross also explained, the risk that it would *unfairly* compete with American Anesthesiology in the future necessarily requires that the two would *actually* compete. *Id.*

The Response asserts without support that "[t]here is no doubt" that American Anesthesiology will continue to compete with Holy Cross for employees after the expiration of the Holy Cross contract. ECF No. 46 at p.12. That conclusory assertion, of course, is not a factual allegation. Where does it compete? Where will it compete? The SAC and Response are utterly silent on this issue. This is another fatal flaw in American Anesthesiology's claim.

## IV. **AMERICAN ANESTHESIOLOGY'S TORTIOUS INTERFERENCE CLAIM SHOULD BE REJECTED**

American Anesthesiology concedes that it must plausibly allege "the existence of a valid contract" to support its tortious interference claim, but asserts that "it has done so" merely by alleging an agreement. (ECF No. 46 at 13.) But, of course, not all noncompete agreements are valid. They must support legitimate business interests. The SAC's reference to the same alleged interests which were inadequate with regard to the nonsolicitation clause also fail it here.

American Anesthesiology attempts to side-step its failure to plausibly allege that Holy Cross engaged in unjustified interference by arguing that this is a "merits issue" and an affirmative defense. (ECF No. 46 at 14.) But (as Holy Cross has explained, ECF No. 37 at p.21), *the SAC itself* alleges that Holy Cross acted to avoid disruption to surgery and other procedures. (ECF No. 36, SAC ¶¶21-22.) Having pled that Holy Cross has a justification for keeping its anesthesia providers, American Anesthesiology was required to allege a "purely malicious motive divorced from any legitimate competitive economic interest." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 (11th Cir. 2015); *see also CMR Construction & Roofing,*

6

*LLC v. UCMS, LLC*, 2021 WL 9182427, at *2 (M.D. Fla. Mar. 15, 2021 (dismissing tortious interference claim where plaintiff failed to "plead any facts that would establish Universal's lack of justification or privilege"). The Response does not identify any such allegations.

American Anesthesiology has also failed to allege that Holy Cross utilized improper methods of interference. Simply asserting, without citation or specifics, that the SAC has "set forth detailed facts about Holy Cross's improper interference," ECF No. 46 at p.15, does not satisfy the requirement to plead an improper *method* of interference. *Duty Free Americas*, 797 F.3d at 1280-81 ("[W]hen plaintiffs have failed to adequately allege improper methods, we have followed the Florida courts and dismissed these claims."). *See also* ECF No. 37 at p.22.

The only allegation in the SAC that could arguably be a "method" of interference is the allegations of "dubious representations." In response to Holy Cross' explanation that these conclusory allegations could not constitute improper disparagement, *see* ECF No. 37 at p.22, the Response states that Holy Cross was "miss[ing] the point." ECF No. 46 at p.14. The Response thus disclaims the only language in the SAC that could even conceivably relate to an improper method. If that "misses the point," then American Anesthesiology has no point.

Finally, tortious interference requires a "specific intent" to interfere, which requires more than mere "knowledge" that Holy Cross' actions will cause a breach of contract. ECF No. 37 at p.24. American Anesthesiology points only to allegations in the SAC that Holy Cross sought to hire its anesthesiology providers and made "dubious representations." (ECF No. 46 at p.16.) But these allegations are entirely consistent with the fact that Holy Cross merely acted with knowledge that contracts would be breached. The existence of "dubious representations" (even if this wholly conclusory phrase could be deemed to be factual) does not plausibly support the conclusion that Holy Cross took its action *for the purpose of interfering* with the contracts.

56207173.9

American Anesthesiology argues that Holy Cross is introducing a "heightened" pleading standard. (ECF No. 46 at p.3.) But the "heightened" pleading standard, applicable to fraud, requires allegations of "who, what, when, where, and how." *Young v. Grand Canyon University, Inc.*, 57 F.4th 861, 873 (11th Cir. 2023). Here, the SAC fails to allege *any* facts to support critical elements of each claim.

V.     **HOLY CROSS' MOTION TO DISMISS IS NOT "PREMATURE"**

Unable to identify sufficient factual allegations in support of its claims, American Anesthesiology argues that the Motion to Dismiss is "premature at this pleading stage." (ECF No. 46 at pp.2, 3.) But American Anesthesiology cannot escape the basic pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."). Without more, American Anesthesiology's conclusory allegations of "relationships," "goodwill," and "training" fail to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

American Anesthesiology also repeatedly conflates the requirement for factual allegations with the later need to prove a claim. At this stage, American Anesthesiology need not prove the facts it alleges. But it must allege enough facts to make its claim plausible. It has failed to do so.[2]

As the Supreme Court has explained, *Twombly*, 550 U.S. at 558-59, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Rule 8 . . . does not unlock the

---

[2] Holy Cross, like American Anesthesiology, cites to cases outside of the motion to dismiss context. That is entirely appropriate in order to assess the legal elements of the claims in the SAC.

8

56207173.9

doors of discovery for a plaintiff armed with nothing more than conclusions."). American Anesthesiology's allegations must at a minimum include "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 545. American Anesthesiology has not done so.

American Anesthesiology seeks to sidestep this issue by stating that "allowing the Group to amend the Counterclaims to cure any perceived deficiencies will neither require **Holy Cross** to expend resources to conduct additional discovery, nor delay the resolution of the dispute." ECF No. 46 at p.17 (emphasis added). But it is not Holy Cross that seeks discovery in a quixotic effort to cure the deficiencies in the Counterclaims.

The cases cited in the Response do not suggest a different conclusion. In *Crom Corp. v. Harvey*, 2012 WL 13018540, at *4-7 (N.D. Fla. Nov. 29, 2012), unlike this case, the plaintiff alleged that the former employees subject to the covenant had direct contact with "customers, clients, consulting engineers, subcontractors, and suppliers," and were "responsible for supervising and coordinating" all business with those individuals. *Id.* at *1, 5. In *LT's Benjamin Records, Inc. v. Machete Music*, 2010 WL 2573961 (S.D. Fla. June 24, 2010), the only dispute concerned whether the restriction was "reasonable in time, area and line of business." *Id.* at *1. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237-38 (11th Cir.2009) and *Whitby v. Infinity Radio*, 951 So.2d 890, 897 (Fla. Dist. Ct. App. 2007), involved assessment of the time, area and line of business requirements *at trial*. Contrary to the Response's rhetoric, a required element of the claim cannot involve an "issue of fact" unless the plaintiff has some factual allegations in the first place which could create such an issue.

## VI.     LEAVE TO AMEND SHOULD BE DENIED

Finally, American Anesthesiology requests leave to amend—again—if the Court finds the Amended Counterclaims "deficient in any way." (ECF No. 46 at pp.16-17.) But American

9

56207173.9

Anesthesiology has already amended its counterclaims in response to the same arguments in Holy Cross' first Motion to Dismiss Counterclaim (ECF No. 25.) If American Anesthesiology was not able to cure those deficiencies before, there is no reason to believe it could do so now.

American Anesthesiology has not identified a single additional factual allegation which it could make to remedy the deficiencies in the SAC. Therefore, any amendment would be futile. *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326-27 (11th Cir. 2001).

For these reasons, the SAC should be dismissed with prejudice for failure to state a claim, and American Anesthesiology's request for leave to amend should be denied.

| Dated: June 4, 2024 | s/Peter R. Goldman |
|---|---|
| | Peter R. Goldman (FL Bar No. 86056) |
| | Nelson Mullins Riley & Scarborough LLP |
| | 100 S.E. 3rd Ave., Suite 2700 |
| | Fort Lauderdale, FL 33394 |
| | (954) 745-5239 (p) |
| | (954) 761-8135 (f) |
| | peter.goldman@nelsonmullins.com |
| | |
| | s/David A. Ettinger (with permission) |
| | David A. Ettinger (P26537) (admitted pro hac) |
| | Benjamin VanderWerp (P84614) (admitted pro hac) |
| | Honigman LLP |
| | 2290 First National Building |
| | 660 Woodward Avenue |
| | Detroit, MI 48226 |
| | (313) 465-7368 (p) |
| | (313) 465-7369 (f) |
| | dettinger@honigman.com |
| | bvanderwerp@honigman.com |
| | |
| | *Attorneys for Plaintiff* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Peter R. Goldman
Peter R. Goldman

56207173.9