IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| HOLY CROSS HOSPITAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN ANESTHESIOLOGY SERVICES OF FLORIDA, INC., AMERICAN ANESTHESIOLOGY, INC., NMSC II, LLC and NORTH AMERICAN PARTNERS IN ANESTHESIA, L.L.P., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. 0:24-cv-60315 |

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES AND COUNTERCLAIMS

Defendants American Anesthesiology Services of Florida, Inc., American Anesthesiology, Inc., NMSC II, LLC, and North American Partners in Anesthesia, LLP (collectively, "Defendants") file the following answer and defenses to the claims asserted by Plaintiff Holy Cross Hospital, Inc. ("Plaintiff" or "Holy Cross") on June 24, 2024 in its First Amended Complaint for Declaratory Relief and Damages (ECF No. 52).

Defendant-Counterclaim Plaintiff American Anesthesiology Services of Florida, Inc. (the "Group") also asserts the amended counterclaims below against Plaintiff for its blatant violation of the parties' Administrative and Clinical Services Agreement, as amended (the "Agreement"). The Group has made significant investments to assemble the team of anesthesiologists and certified registered nurse anesthetists ("CRNAs") ("Anesthesiologists" and "CRNAs" will be referred to collectively as the "Clinicians") who provide special, high-quality care for the benefit of Plaintiff under the Agreement. As part of the Agreement, Plaintiff and the Group mutually

agreed that they would not take any action, directly or indirectly, to induce each other's employees to leave their employment. In direct violation of its contractual obligations, Plaintiff has taken actions to induce the Group's Clinicians to cease their employment with the Group by extending employment offers to these individuals, and even encouraged these individuals to breach their noncompete agreement with the Group. Although the Group has delivered a cease and desist letter to Plaintiff demanding that it immediately stop breaching the Agreement, Plaintiff has refused to comply with its contractual obligations.

In fact, upon information and belief, after this lawsuit was filed, Holy Cross went a step further when it engaged legal counsel for the individual Clinicians and encouraged the Clinicians to breach their individual noncompete agreements with the Group. Upon information and belief, Holy Cross and the hired legal counsel has told the Clinicians to disregard their noncompete agreements, reassuring them that the instant litigation will settle. Holy Cross has made these dubious representations in order to induce the Clinicians to leave the employ of the Group. Plaintiff's failure to comply with its obligations under the Agreement has forced the Group to assert the counterclaims below.

## DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT

### INTRODUCTION

1.      Defendants deny the allegations in this paragraph.

2.      Defendants admit that American Anesthesiology Services of Florida, Inc. employs anesthesiologists and CRNAs who have signed employment agreements that contain a variety of provisions, including ones addressing the ability to compete following termination of employment, but deny the remaining allegations in this paragraph.

3.      Defendants admit that clauses addressing competition and solicitation are common and have pro-competitive benefits, including the protection of patient relationships and trade secrets, but deny the remaining allegations in this paragraph.

4.      Defendants deny the allegations in this paragraph.

5.      This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

6.      This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

## THE PARTIES

7.      Defendants admit that Plaintiff is a hospital located in Fort Lauderdale, Florida, but lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph.

8.      Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

9.      Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

10.     Defendants admit that American Anesthesiology Services of Florida, Inc. is a Florida corporation that maintains offices in Melville, New York, but deny the remaining allegations in this paragraph.

11.     Defendants deny the allegations in this paragraph.

12.     Defendants admit that NMSC II, LLC is the parent company of American Anesthesiology, Inc. and that NMSC II, LLC acquired the stock of American Anesthesiology, Inc. from MEDNAX Corporation.  Defendants deny the remaining allegations in this paragraph.

3

13.     Defendants admit that North American Partners in Anesthesia, LLP ("NAPA") is a New York professional limited liability partnership based in Melville, New York, and, except as so admitted, deny the remaining allegations in this paragraph, and state that the referenced website speaks for itself.

14.     Defendants deny the allegations in this paragraph.

15.     Defendants admit that the Agreement and each of the referenced amendments were executed, and, except as so admitted, aver that those documents speak for themselves, and deny the remaining allegations in this paragraph.

## JURISDICTION AND VENUE

16.     This paragraph is a legal assertion to which no answer is required.

17.     This paragraph is a legal assertion to which no answer is required.

## TRADE AND COMMERCE

18.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

19.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

20.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

## FACTUAL ALLEGATIONS

### The Role of Anesthesia Providers

21.     Defendants admit the allegations in this paragraph.

22.     Defendants admit the allegations in this paragraph.

23.     Defendants admit that anesthesiologists and CRNAs play important roles in the care of patients, but deny the remaining allegations in this paragraph.

24.     Defendants admit that anesthesiologists and CRNAs work together in a care team model, but deny the remaining allegations in this paragraph.

25.     Defendants admit that hospitals may obtain the services of anesthesiologists and CRNAs by employing them directly or by contracting with an independent group, but deny the remaining allegations in this paragraph.

26.     Defendants deny the allegations in this paragraph.

27.     Defendants admit that there is a shortage of anesthesia providers and that their presentations speak for themselves, but deny the remaining allegations in this paragraph.

28.     Defendants admit that additional training for anesthesiologists is required under certain circumstances, but deny the remaining allegations in this paragraph.

### Holy Cross Agreements with American Anesthesiology

29.     Defendants admit the allegations in this paragraph.

### Defendants' Conduct

30.     Defendants deny the allegations in this paragraph including its subparts.

31.     Defendants deny the allegations in this paragraph.

32.     Defendants admit that the amount paid by Plaintiff has changed over time and that Plaintiff owes money to American Anesthesiology Services of Florida, Inc. the subsidy under the Agreement, but deny the remaining allegations in this paragraph.

33.     Defendants deny the allegations in this paragraph.

34.     Defendants deny the allegations in this paragraph.

35.     Defendants deny the allegations in this paragraph.

36.     Defendants deny the allegations in this paragraph.

37.     Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

38.     Defendants deny the allegations in this paragraph.

389.     Defendants deny the allegations in this paragraph.

40.     Defendants state that the Agreement speaks for itself, and denies the remaining allegations in Plaintiff's Complaint.

41.     Defendants deny the allegations in this paragraph.

42.     Defendants deny the allegations in this paragraph.

43.     Defendants deny the allegations in this paragraph.

**The Effects of the Noncompetes and Nonsolicitation Clause**

44.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

45.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

46.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

47.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

48.     Defendants admit that there is a shortage of anesthesia providers, but deny the remaining allegations in this paragraph.

49.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

50.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

51.     Defendants deny the allegations in this paragraph.

52.     Defendants deny the allegations in this paragraph.

53.     Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph.

54.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

55.     Defendants deny the allegations in this paragraph.

56.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**The Effect of Private Equity**

57.     Defendants admit that private equity firms have ownership interests in NAPA Management Services Corporation (which provides management services to NAPA), but deny the remaining allegations in this paragraph.

58.     Defendants deny the allegations in this paragraph.

**Holy Cross' Efforts to Improve Its Anesthesia Coverage**

59.     Defendants admit that Plaintiff gave notice of non-renewal on December 29, 2023, but deny the remaining allegations in this paragraph.

60.     Defendants deny the allegations in this paragraph.

61.     Defendants deny the allegations in this paragraph.

62.     Defendants deny the allegations in this paragraph.

63.     Defendants deny the allegations in this paragraph.

64.     Defendants deny the allegations in this paragraph.

65.     Defendants deny the allegations in this paragraph.

66.     Defendants deny the allegations in this paragraph.

**<u>Holy Cross' Actions and the Need for Litigation</u>**

67.     Defendants deny the allegations in this paragraph.

68.     Defendants lack sufficient information or knowledge to admit or deny the allegations in this paragraph although Defendants admit that American Anesthesiology has filed a counterclaim in this case claiming that Holy Cross violated the nonsolicitation clause between the parties and tortiously interfered with the noncompete clauses it has with its providers.

69.     Defendants deny the allegations in this paragraph.

70.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**<u>Relevant Antitrust Service Markets</u>**

**<u>Hospital-Only Anesthesia Services</u>**

71.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

72.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

73.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

74.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

75.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

76.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

77.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

78.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

79.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

80.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

81.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

82.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

## Other Relevant Service Markets

83.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

84.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

85.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

86.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

87.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

88.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

89.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

90.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

91.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**Relevant Geographic Market for Anesthesia**

92.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

93.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

94.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

95.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

96.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

97.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

98.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**Relevant Antitrust Geographic Market for Surgeries and Heart Procedures**

99.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

100.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**Market Power**

101.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

102.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

103.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

104.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

105.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**Anticompetitive Effects in the Relevant Anesthesia Markets**

106.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

107.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

108.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

109.    This paragraph is a legal assertion to which no answer is required.  The Non-Compete Rule speaks for itself.  However, Defendants state that it is uncertain at this stage whether the Non-Compete Rule will go into effect on September 4, 2024.  *See* ECF No. 39.

110.    This paragraph is a legal assertion to which no answer is required.  The Non-Compete Rule speaks for itself.  However, at this time, Defendants have filed a lawsuit to enforce their non-competes with the anesthesia providers who have worked at Holy Cross.

111.    This paragraph is a legal assertion to which no answer is required.  The Non-Compete Rule speaks for itself.  However, at this time, Defendants have filed a lawsuit to enforce their non-competes with the anesthesia providers who have worked at Holy Cross.

112.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

113.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

114.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

115.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

116.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

### **Anticompetitive Effects in the Relevant Surgery and Heart Procedure Markets**

117.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

118.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

119.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

120.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

121.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

122.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**Defendants' Noncompete Agreements and the Nonsolicitation Clause Do Not Provide Any Procompetitive Benefits and Do Not Serve a Reasonable Business Interest**

123.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

124.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

125.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

126.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

127.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

128.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

129.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

130.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

### COUNT I
### UNLAWFUL AGREEMENT IN VIOLATION OF
### SHERMAN ACT § 1
### Relevant Anesthesia Markets

131.     This paragraph restates and realleges allegations from earlier paragraphs.  To the extent an answer is required, Defendants restate and reallege their answers from those earlier paragraphs.

132.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

133.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

134.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

135.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

136.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

### COUNT II
### UNLAWFUL AGREEMENT IN VIOLATION OF
### SHERMAN ACT § 1
### Relevant Surgery and Cardiac Procedure Markets

137.     This paragraph restates and realleges allegations from earlier paragraphs.  To the extent an answer is required, Defendants restate and reallege their answers from those earlier paragraphs.

138.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

139.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

140.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

141.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**COUNT III**
**VIOLATION OF FLORIDA ANTITRUST ACT**

142.    This paragraph restates and realleges allegations from earlier paragraphs.  To the extent an answer is required, Defendants restate and reallege their answers from those earlier paragraphs.

143.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

144.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

**COUNT IV**
**REQUEST FOR DECLARATORY JUDGMENT UNDER FLORIDA LAW**

145.    This paragraph restates and realleges allegations from earlier paragraphs.  To the extent an answer is required, Defendants restate and reallege their answers from those earlier paragraphs.

146.    This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

147.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

### COUNT V
### BREACH OF CONTRACT

148.     This paragraph restates and realleges allegations from earlier paragraphs.  To the extent an answer is required, Defendants restate and reallege their answers from those earlier paragraphs.

149.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

150.     This paragraph is a legal assertion to which no answer is required.  To the extent an answer is required, Defendants deny the allegations in this paragraph.

### REQUEST FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief that it seeks.

### DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims fail, in whole or in part, to state claims upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by Plaintiff's prior material breach of the Administrative and Clinical Services Agreement, as amended.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by waiver.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by estoppel by contract, quasi-estoppel, and/or equitable estoppel.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, *in pari delicto*, and/or Plaintiff's own bad faith.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to damages, interest, attorneys' fees, or other expenses.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, are subject to the doctrine of setoff or offset.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate its damages, if any.

## TENTH AFFIRMATIVE DEFENSE

To the extent Defendants had any obligations to Plaintiff, such obligations have been performed fully, completely, properly and in good faith in all respects.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of frustration of purpose.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of ratification and/or Plaintiff has consented and/or acquiesced to the conduct about which it complains.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Defendants' conduct was reasonable and justified.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because it has failed to define a legally cognizable relevant market.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the injuries and damages alleged by Plaintiff do not constitute legally cognizable antitrust injuries within a properly defined relevant antitrust market.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because the conduct about which Plaintiff complains is supported by procompetitive justifications and produces procompetitive benefits that outweigh any anticompetitive effects.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of release.

## NINETEENTH AFFIRMATIVE DEFENSE

Each count of Plaintiff's Complaint against Defendants is barred by the applicable statute of limitations to the extent any of the actions complained of against Defendants occurred outside of applicable specific statutes of limitations for each count.

## TWENTIETH DEFENSE

This Court lacks personal jurisdiction over Defendant North American Partners in Anesthesia, L.L.P.

## TWENTY-FIRST DEFENSE

Plaintiff's claims are barred, in whole or in part, by the indemnification provision in the Administrative and Clinical Services Agreement, as amended.

Defendants intend to add and rely upon such other and further defenses as may become apparent during the discovery of this action and reserve the right to amend this answer to assert such defenses.

## **COUNTERCLAIMS**

The Group hereby asserts the following amended counterclaims against Plaintiff/Counterclaim Defendant Holy Cross Hospital, Inc. ("Holy Cross" or "Hospital").

1.      This action arises from Holy Cross's flagrant and material breach of the Agreement, which clearly and unequivocally prohibits Holy Cross from directly or indirectly taking any action to induce any employee to cease his or her employment with the Group.  Yet, despite its contractual obligations, that is exactly what Holy Cross has done – in a deliberately public fashion in an attempt to disparage and damage Defendants.  In particular, Holy Cross has met with all of the Group's Clinicians in an effort to recruit them; Holy Cross has sent written offers of employment to all of the Clinicians; and upon information and belief, after this lawsuit was filed, Holy Cross engaged legal counsel for the individual Clinicians to encourage them to breach their individual noncompete agreements with the Group.

2.      Holy Cross's unlawful actions, in conjunction with the significant media attention that this lawsuit has garnered,[1] have caused actual and consequential damages to the Group.  The damages suffered by the Group include irreparable harm that supports the issuance of legal and equitable relief from this Court.  Absent enforcement of the Non-Solicitation Clause, the Group's irreparable harm will include, without limitation, (a) the loss of customer relationships with the physicians and other professionals performing surgeries and other procedures at Holy Cross, (b)

---

[1] *See,* *e.g.,* https://www.beckersasc.com/anesthesia/anesthesia-provider-sued-over-noncompete-clauses.html

the loss of the Group's trained Clinicians, (c) the loss of other medical facility customers to whom the Group provide anesthesia services, and (d) the resulting adverse consequences of same, including but not limited to, reputational harm.

## THE PARTIES

3.      The Group is a Florida professional corporation that has its headquarters in Melville, New York.

4.      Holy Cross is a faith-based, nonprofit, tax exempt corporation organized under and by virtue of the laws of Florida and is headquartered in Ft. Lauderdale, Florida.

## FACTUAL ALLEGATIONS

### The Parties' Agreement

5.      Effective May 1, 2021, the Group and Holy Cross entered into the original Administrative and Clinical Services Agreement ("Original Agreement").   The Original Agreement established an exclusive services arrangement between Holy Cross and the Group for the provision of anesthesiology services for Holy Cross's patients.

6.      Pursuant to Section X.A. of the Original Agreement, the parties agreed that the agreement would remain in effect for two years—until April 30, 2023. The Original Agreement further stated that, at the end of the term, the parties may, by mutual written agreement, agree to extend the Original Agreement for a period of no more than one year.

### The Non-Solicitation Clause

7.      Among other things, the Original Agreement also contained a provision in Section XI.C. that protected the significant time, effort, and investment made by the Group to assemble its team of Clinicians:

> During the Term of this Agreement and for one (1) year thereafter, Hospital **will not directly or indirectly**, whether as an individual, advisor, employee, agent, or

otherwise **take any action to induce any employee to cease his or her employment or engagement with Group**.

8.      The Original Agreement also contained a reciprocal provision in Section XI.C (the two provisions cited in paragraphs 6 and 7 are collectively referred to as the "Non-Solicitation Clause"), that protected the significant time, effort, and investment made by Holy Cross to assemble its team of employees:

> During the term of this Agreement and for one (1) year thereafter, Group **will not directly or indirectly**, whether as an individual, advisor, employee, agent, or otherwise **take any action to induce any employee to cease his or her employment or engagement with Hospital**.

9.      Importantly, the Non-Solicitation Clause was not altered or modified over the past three years, despite the multiple amendments that the parties – both sophisticated and assisted by counsel – negotiated and executed.  If Holy Cross believed that the Non-Solicitation Clause was unenforceable, it had every opportunity to request that it be struck during the numerous negotiations between the parties over the years; but, of course, Holy Cross did not do so since the Non-Solicitation Clause also benefitted Holy Cross because it is mutual and also binding on the Group.

<u>The Amendments to the Agreement</u>

10.      Effective April 24, 2023, the Group and Holy Cross entered into an Amendment to Administrative and Clinical Services Agreement ("First Amendment").  Among other things, Section 2 of the First Amendment amended Section X.A. of the Original Agreement to extend the agreement's term until July 31, 2023. At the end of the term, the First Amendment still allowed the parties to extend the Original Agreement for a period of no more than one year upon mutual written agreement.  Accordingly, absent notice of termination from one of the parties, the Agreement would continue until July 31, 2023.

11.     Following execution of the First Amendment, the Group and Holy Cross signed the Second Amendment to Administrative and Clinical Services Agreement ("Second Amendment") that, among other things, extended the Agreement's term until August 31, 2023. The effective date of the Second Amendment is July 28, 2023.

12.     Following execution of the Second Amendment, the Group and Holy Cross signed the Third Amendment to the Administrative and Clinical Services Agreement ("Third Amendment"), effective August 31, 2023, which extended the Agreement's term until December 31, 2023.

13.     Finally, the Group and Holy Cross signed the Fourth Amendment to the Administrative and Clinical Services Agreement ("Fourth Amendment"), effective December 14, 2023, which extended the Agreement's term until 11:59 PM on June 30, 2024. This extension means that the mutual Non-Solicitation Clause in the Agreement extends until 11:59 PM on June 30, 2025. The Original Agreement, First Amendment, Second Amendment, Third Amendment, and Fourth Amendment, are collectively referred to as the "Agreement".

<u>The Group's Legitimate Business Interests</u>

14.     The Agreement and its Non-Solicitation Clause are valid and enforceable.  At the outset, Holy Cross does not challenge the length or geographic scope of the Non-Solicitation Clause.  Holy Cross instead argues only that Non-Solicitation Clause does not protect the Group's legitimate business interests.  Not true.

15.     Among other things, the Non-Solicitation Clause protects the Group's substantial relationships with its existing customers, patients, and clients, which is a legitimate business interest sufficient to justify a restrictive covenant under Florida law.  *See* § 542.335(b)(3), Florida

Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 3. Substantial relationships with specific prospective or existing customers, patients, or clients").

16.     Moreover, the Non-Solicitation Clause protects the Group's goodwill, which arises from its customer, patient, and client relationships.  *See* § 542.335(b)(4), Florida Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 4. Customer, patient, or client goodwill associated with: a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; b.   A specific geographic location; or c.   A specific marketing or trade area.").

17.     Furthermore, the Group has a legitimate business interest in protecting the extraordinary and specialized training the Group has provided to its Clinicians at significant expense.  *See* § 542.335(b)(5), Florida Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 5. Extraordinary or specialized training").

<u>The Group's Legitimate Business Interests: Substantial Relationships and Goodwill</u>

18.     The Group's legitimate business interests arise from, among other things, its customer, patient, and client relationship and its goodwill.  All of these interests support enforcement of the Non-Solicitation clauses in the Agreement.

19.     The physicians and other professionals practicing at Holy Cross are the Group's "customers" or "clients" and the patients treated at Holy Cross are the Group's "patients."  The Group has devoted significant time and resources into developing all of these relationships, as recognized by Holy Cross.

20.     According to Holy Cross, it is important for anesthesia clinicians – like those provided by the Group – "to have ongoing relationships with the surgeons and other physicians who perform the procedures that require anesthesia" because "physicians would prefer to use

hospital-based anesthesiologists they know and trust rather than to work extensively with locum tenens physicians." Amended Complaint ¶ 31. Holy Cross also acknowledges that physicians have "preferred anesthesiologists with whom they have developed long, successful working relationships." *Id*. ¶ 105.  The Group's Clinicians meet all of these criteria that Holy Cross alleges to be important for developing and maintaining substantial relationships with customers, patients, and clients under Florida law.

21.     Holy Cross further admits that "[m]ost of American Anesthesiology's providers at Holy Cross have worked at that hospital for many years, and have established close working relationships with Holy Cross surgeons, cardiologists and other physicians." Amended Complaint ¶ 50.  Holy Cross also acknowledges that "[i]f these physicians were forced to immediately work with other anesthesia providers with whom they were not familiar and the replacement anesthesia providers were not familiar with the hospital facilities, this would cause a significant disruption at Holy Cross, and would also make it more likely that many of these surgeons, cardiologists, OB/GYNs and other proceduralists would shift some or all of their cases to other hospitals." *Id*. By conceding that physicians would move cases to other hospitals, Holy Cross confirms that the Group has significant relationships with those physicians, who are the Group's customers and clients.

22.     As Holy Cross acknowledges, having "a stable relationship with a core group of local anesthesia providers who know the surgeons, other proceduralists and nursing teams working at the hospital highly enhances the care of patients." Amended Complaint ¶ 26.  This is exactly what the Group has provided under the Agreement since the Group is the exclusive anesthesia provider at Holy Cross.

23.     All of these admissions by Holy Cross show that the Group has legitimate business interests under Florida law – which are protected by the Non-Solicitation Clause – via the substantial relationships that the Group has with its customers, patients, and clients and via the goodwill that the Group has developed with those same customers, patients, and clients.

<u>The Group's Legitimate Business Interests: Extraordinary and Specialized Training</u>

24.     The Non-Solicitation Clause also furthers the Group's legitimate business interest in protecting the significant financial investments made to develop its Clinicians and provide them with extraordinary and specialized training.

25.     As noted above, the Group develops meaningful and trusting relationships with the surgeons, cardiologists, OB/GYNs and other proceduralists practicing at Holy Cross.  To do this, the Group trains its Clinicians on a variety of best practices, including operating room efficiency, inclusion, problem resolution, and culture building.

26.     The Group also provides its Clinicians with access to, and training on how to use, the Group's proprietary clinical outcome database, which captures all of the material information about every procedure performed by its affiliated anesthesia practices.  This database, along with regular meetings to address quality assurance and other issues, provide the Clinicians with real-time, data-driven analysis and best practices, which the Clinicians use to improve outcomes for all procedures.

27.     The Group's Clinicians also have access to Anesthesia Risk Alerts ("ARAs"), which are proprietary to the Group and its affiliates and provide the Clinicians with novel mitigation strategies and training to better manage high-risk clinical scenarios.  The Group's ARA program has received the John M. Eisenberg Patient Safety and Quality Award in the National Level Innovation in Patient Safety and Quality category, which is presented by Joint Commission,

the nation's largest healthcare accreditor, and the National Quality Forum, the nation's resource for healthcare quality measurement and improvement.

28.     All of the specialized training and information described above make the Group's Clinicians specially equipped and trained to provide safe, quality, and special clinical care with exceptional outcomes.  The Group's continuing training and education also make its Clinicians unique and provide additional value to the medical community, particularly Holy Cross.  The Non-Solicitation Clause between the Group and Holy Cross, as well as the restrictive covenants between the Group and the Clinicians, are designed and intended to protect the Group's investment in the Clinicians' specialized and extraordinary training and knowledge base.

29.     For all these reasons, the Group has a significant and legitimate business interest in the extraordinary and specialized training and knowledge provided to the Group and its Clinicians.  Holy Cross has received invaluable benefits from the Group's investments in the Clinicians' training that cannot be calculated based on money damages.

<u>Holy Cross's Breaches of the Agreement</u>

30.     On December 29, 2023, Holy Cross provided the Group with a Notice of Non-Renewal of the Agreement with an effective date of July 1, 2024.

31.     On February 26, 2024, Holy Cross issued an email to its medical staff referencing a dispute with the Group, which included the following statement: "Holy Cross has decided to offer employment to NAPA's anesthesia providers."  In that same message, Holy Cross indicated that it was suing for alleged violations of federal and state antitrust law.  Holy Cross filed this lawsuit on the same day as its February 26 email.

32.     On or about February 26, 2024, Holy Cross also delivered offer letters to the Clinicians that annexed Holy Cross's compensation policy, benefits guide, professional expense

reimbursement policy, paid time off policy, and proposed employment agreement.  These actions by Holy Cross were direct and blatant violations of the Agreement and its mutual Non-Solicitation Clause.

33.    On March 1, 2024, shortly after receiving information about Holy Cross's February 26 email and offer letters, the Group delivered a cease and desist letter to Holy Cross demanding that it immediately refrain from any further actions to induce – directly or indirectly – any Group clinician to cease or terminate his or her employment in violation of the Agreement.

34.    Despite receiving the cease and desist letter, Holy Cross has not rescinded the offers of employment to the Group's employees or otherwise cured its breaches of the Agreement.  In fact, Holy Cross doubled down on the unlawful activity.

35.    Upon information and belief, Holy Cross hired counsel for the Clinicians to encourage them to breach their individual noncompete agreements with the Group, reassuring them that this litigation will "settle," and that the Group will not enforce the noncompete agreements.

36.    Holy Cross continues its conduct of regularly meeting and soliciting the Clinicians in hopes to poach them from the Group.

## CAUSES OF ACTION

### First Claim for Relief – Breach of Contract

37.    The foregoing paragraphs are incorporated by reference as though fully set forth herein.

38.    The Group has performed all of its obligations under the Agreement, a valid contract, and all conditions precedent to Holy Cross's required performance under the Agreement have been performed, will be performed, or have been waived.

39.     The Agreement requires Holy Cross to refrain from directly or indirectly taking any action to induce any employee of the Group to cease his or her employment with the Group.  This includes, but is not limited to, the obligation that Holy Cross refrain from making offers of employment to any anesthesiologist or CRNA employed by the Group and from taking any further action with respect to any offer of employment extended on or after February 26, 2024, to any anesthesiologist or CRNA employed by the Group.

40.     The Agreement and its Non-Solicitation Clause are valid and enforceable.  As explained above, the Non-Solicitation Clause protects and furthers the Group's legitimate business interests, including (a) its relationships with customers, patients, and clients, like the physicians and other professionals who perform surgeries and other procedures at Holy Cross; (b) its goodwill with customers, patients, and clients; and (c) the investments that the Group has made in its Clinicians' extraordinary and specialized training, including the Group's proprietary database and ARAs.

41.     Among other things, the Non-Solicitation Clause is intended to prevent Holy Cross from taking and capitalizing on the Group's substantial relationships with customers, patients, and clients and the goodwill that the Group has developed with them.  It is also intended to prevent Holy Cross from free-riding – i.e., not paying for – the extraordinary and specialized training that the Group provides to its Clinicians.

42.     Holy Cross has materially breached the Agreement by directly or indirectly taking actions to induce employees of the Group to cease their employment with the Group.

43.     The Group has incurred actual and consequential damages, some of which are irreparable, because of Holy Cross's material breaches of the Agreement.  The Group therefore

seeks all remedies to which they may be entitled, including (but not limited to) actual damages, consequential damages, and attorneys' fees and costs.

### Second Claim for Relief – Tortious Interference With Business Relationship

44.     The foregoing paragraphs are incorporated by reference as though fully set forth herein.

45.     The Group has a business relationship with its Clinicians, who have entered into valid and enforceable contracts with the Group to provide anesthesiology services on behalf of the Group.

46.     The Group employs anesthesiologists and CRNAs who have signed employment agreements that contain a variety of provisions, including ones addressing the ability to compete following termination of employment.

47.     The Group has invested in and procured a unique set of Clinicians that have a special relationship with its customers, patients, and clients, including those at Holy Cross.

48.     The non-compete provisions of these contracts are valid because they protect the Group's business interests, goodwill, and significant investment in (1) recruiting and retaining a unique set of Clinicians that have a special and trusting relationship with its customers, patients, and clients, including Holy Cross, the patients treated there, and the physicians and other professionals practicing there; (2) training its Clinicians on a variety or best practices, including operating room efficiency, inclusion, problem resolution, and culture building; (3) building its talent base by using unique and propriety talent acquisition and onboarding processes, which allow the Group to hire and retain excellent Clinicians; and (4) developing a robust and unique learning and knowledge base for its Clinicians and providing them with extraordinary and specialized training.

49.     Holy Cross is not a party to the contracts between the Group and its Clinicians but has direct knowledge of them, including the provisions addressing the Clinicians' ability to compete following termination of their employment.

50.     Despite Holy Cross's knowledge of the contractual relationships between the Group and its Clinicians, Holy Cross has directly and indirectly taken actions to interfere with these relationships by inducing the Group's Clinicians to cease their employment with the Group, and causing them to violate the non-compete provision of their contracts with the Group by going to work for Holy Cross.

51.     In addition, upon information and belief, after this lawsuit was filed, Holy Cross engaged legal counsel for the individual Clinicians and encouraged them to breach their individual noncompete agreements with the Group by representing to them that their noncompete agreements would not be upheld, and that the instant litigation will settle.  Holy Cross has made these dubious representations to induce the Clinicians to leave the employ of the Group.

52.     The actions of Plaintiff constitute an intentional and unjustified interference with the business relationship between the Group and its Clinicians.

53.     Though parties that have an economic interest in a business relationship have a limited privilege to interfere with a business relationship, "the privilege does not encompass the purposeful causing of a breach of contract." *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001) (applying Florida law) (internal citations omitted).

54.     Many of the Group's Clinicians have been induced to breach their employee contracts and an estimated twenty-nine have accepted Holy Cross's employment offer thus far. Therefore, Holy Cross has purposefully caused breaches of the contracts between the Group and

its Clinicians by offering them employment with the knowledge that the Clinicians' acceptance of such an offer would be a breach of the Clinicians' non-compete provisions with the Group.

55.     Furthermore, the Group has incurred actual and consequential damages, some of which are irreparable, because of Holy Cross's tortious interference with the business relationship between the Group and its Clinicians.  The Group therefore seeks all remedies to which they may be entitled, including (but not limited to) actual damages, consequential damages, and attorneys' fees and costs.

## REQUEST FOR RELIEF

For these reasons, the Group respectfully prays that the Court: (a) render judgment in the Group's favor on its counterclaims; (b) award the Group all actual and consequential damages, attorneys' fees, and costs of court to which it entitled; and (c) grant the Group all other and further relief, at law and in equity, to which it may be justly entitled.

## DEMAND FOR JURY TRIAL

The Group hereby demand a trial by jury on all issues so triable.

Dated: July 8, 2024.

Respectfully submitted,

By: */s/ Jennifer Lada*
    Jennifer Lada, Esq.
    Florida Bar No. 119247
    W. Scott O'Connell, Esq.
    *(admitted Pro Hac Vice)*
    Marc L. Antonecchia, Esq.
    *(admitted Pro Hac Vice)*
    HOLLAND & KNIGHT LLP
    31 West 52nd Street
    New York, NY 10019
    Telephone: 212.513.3200
    *jennifer.lada@hklaw.com*
    *scott.oconnell@hklaw.com*
    *marc.antonecchia@hklaw.com*

William M. Katz, Jr., Esq.
*(admitted Pro Hac Vice)*
HOLLAND & KNIGHT LLP
One Arts Plaza, 1722 Routh Street
Dallas, TX 75201
Telephone: 214.969.1330
*william.katz@hklaw.com*

Taariq M. Lewis, Esq.
Florida Bar No. 1031385
HOLLAND & KNIGHT, LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799
*taariq.lewis@hklaw.com*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on this 8th day of July, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

 *s/ Jennifer Lada*
Jennifer Lada