# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**Case No. 0:24-cv-60315-Leibowitz/Strauss**

HOLY CROSS HOSPITAL, INC.,

    Plaintiff,

v.

AMERICAN ANESTHESIOLOGY
SERVICES OF FLORIDA, INC.,
AMERICAN ANESTHESIOLOGY, INC.,
NMSC II, LLC and NORTH AMERICAN
PARTNERS IN ANESTHESIA, L.L.P.,

    Defendants.

**AMERICAN ANESTHESIOLOGY SERVICES OF FLORIDA, INC., AMERICAN ANESTHESIOLOGY, INC., NMSC II, LLC, AND NORTH AMERICAN PARTNERS IN ANESTHESIA, L.L.P.'S MOTION TO DISMISS HOLY CROSS HOSPITAL, INC.'S ANTITRUST CLAIMS FOR MONETARY DAMAGES AND INCORPORATED <u>MEMORANDUM OF LAW</u>**

## I.    INTRODUCTION

The Court should dismiss for lack of subject matter jurisdiction Plaintiff Holy Cross Hospital, Inc.'s ("Holy Cross") claims for monetary damages under both the Sherman Act and the Florida Antitrust Act.[1] Holy Cross lacks standing to recover damages from Defendants American Anesthesiology Services of Florida, Inc. (the "Group"), American Anesthesiology, Inc., NMSC II, LLC, and North American Partners in Anesthesia, L.L.P. (collectively, "NAPA") for two independent reasons. *First*, Holy Cross cannot establish that the damages sought for its antitrust claims are traceable to NAPA's allegedly wrongful conduct. *Second*, Holy Cross cannot establish that a favorable decision by this Court would redress its alleged antitrust injuries. Accordingly, the Court should grant this motion and dismiss for lack of jurisdiction Holy Cross's claims for monetary damages under the Sherman Act and the Florida Antitrust Act.[2]

## II.    FACTUAL BACKGROUND

This case is about Holy Cross's admitted breaches of its contractual obligations to the Group by actively recruiting and hiring the Group's team of anesthesiologists and certified registered nurse anesthetists (together, the "Clinicians") in violation of the mutual and reciprocal non-solicitation clause ("Non-Solicitation Clause") in the parties' Administrative and Clinical Services Agreement, as amended (the "Agreement"). *See* First Amended Complaint ("FAC") ¶ 67 (alleging that "Holy Cross therefore offered employment to the anesthesia providers working

---

[1] If the Court grants this motion, the only claims that remain would be: (1) Holy Cross's claims for declaratory and injunctive relief pursuant to the Sherman Act and the Florida Antitrust Act; (2) Holy Cross's request for declaratory judgment under Florida law; and (3) Holy Cross's claims for damages and declaratory and injunctive relief pursuant to its breach of contract claim.

[2] This motion is a facial attack on Holy Cross's standing. "On a facial attack to a complaint for lack of standing, we take the allegations of the complaint as true." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021). To be clear, however, NAPA does not concede the truth of Holy Cross's allegations for any other purpose.

1

at its hospitals, effective on expiration of the Agreement on July 1, 2024"); *id.* ¶ 68 ("Many of American Anesthesiology's providers have agreed to become employed by Holy Cross … ."). In its FAC, Holy Cross brings claims against NAPA for violation of Section 1 of the Sherman Act, violation of the Florida Antitrust Act, declaratory judgment under Florida law, and breach of contract. *Id.* ¶¶ 131–50.

At the center of this dispute is the Agreement between Holy Cross and the Group.[3] As part of the Agreement, Holy Cross and the Group mutually agreed that they would not take any action, directly or indirectly, to induce each other's employees to leave their employment. *See* Agreement § XI.C (ECF No. 37-1 at 19–20). In direct violation of its contractual obligations, Holy Cross has taken actions to induce the Group's Clinicians to cease their employment with the Group by extending employment offers to these individuals and openly encouraging the Clinicians to breach their noncompete agreements with the Group ("Non-Compete Provision," and collectively with the Non-Solicitation Provision, the "Covenants."). *See* FAC ¶¶ 67–68.

Holy Cross's antitrust claims directly attack the Covenants, which Holy Cross alleges are unlawful restraints of trade. *See* FAC ¶¶ 132, 136 (identifying "the noncompete agreements between Defendants and their providers, as well as the nonsolicitation clause" as the contractual provisions that form the basis of the antitrust claims). Pursuant to its antitrust claims, Holy Cross seeks three categories of relief: damages, injunctive relief, and declaratory relief. *See* FAC, Request for Relief. Reading the FAC generously, Holy Cross alleges three types of injuries in connection with its antitrust claims: (1) higher costs; (2) potential lost revenue; and (3) costs associated with having to delay patient cases. *See id.* ¶¶ 1, 36, 39, 56, 105, 117, 120.

---

[3] The Agreement, First Amendment, Second Amendment, Third Amendment, and Fourth Amendment were previously filed as a single document at ECF No. 37-1. For the Court's convenience, citations in this brief are to that filing and use the pagination from that ECF document.

*First*, Holy Cross alleges that it must make "exorbitant payments" for services provided by the Group's Clinicians. FAC ¶ 1; *see id.* ¶ 56 (alleging that Holy Cross was "forced … to pay exorbitant amounts for anesthesia services"); *id.* ¶ 105 (alleging that Holy Cross "is forced to pay exorbitant rates"). *Second*, Holy Cross claims that its "ability to attract and retain cases from surgeons, cardiologists and other physicians who perform procedures which require anesthesia" has been harmed. *Id.* ¶ 39. Although unclear, Holy Cross appears to allege that it has lost or potentially would lose revenues obtained by way of additional procedures requiring anesthesia. *Id.* ¶¶ 117, 120 (alleging that if the Non-Solicitation Clause were enforced "the vast majority of surgeries and cardiac procedures [would be diverted] from Holy Cross" and Holy Cross would lose "surgeries, heart procedures[,] and other procedures"). *Third* (and somewhat relatedly), Holy Cross alleges that it has been damaged "because Holy Cross has been forced to delay cases and to pay surgical staff to be on hand for [surgeries], which are often cancelled only at the last minute based on American Anesthesiology's last minute information on its inability to staff those [surgeries]." *Id.* ¶ 36.

The categories of damages that Holy Cross seeks to recover through its antitrust claims are all subject to and arise directly out of the parties' Agreement. For example, while Holy Cross complains about "exorbitant" costs, *see supra*, the Agreement and its Amendments clearly set forth what Holy Cross must pay "for the staffing and provision of Anesthesia Services." [4] Agreement § III.D (ECF No. 37-1 at 9); First Amendment § 4 (setting forth costs) (ECF No. 37-1 at 62); Second Amendment § 3 (setting forth "the total compensation paid to the Group for all services described in the Agreement … for the time period August 1, 2023 to August 31, 2023") (ECF No.

---

[4] Capitalized terms not otherwise defined in this motion shall have the meaning set forth in the Agreement and its Amendments.

3

37-1 at 64); Third Amendment § 3 (similar for time period September 1, 2023 to December 31, 2023) (ECF No. 37-1 at 66); Fourth Amendment § 3 ("The Parties agree to replace the current financial arrangements in Schedule III.D with the attached III.D.") (ECF No. 37-1 at 68).

The Group's staffing responsibilities are also governed by the Agreement. *See, e.g.*, Agreement § II.D ("Group is responsible for scheduling a sufficient number of Providers to provide on-side and on-call coverage during the times and at the staffing levels designated on Exhibit B.") (ECF No. 37-1 at 3–4). Although Holy Cross complains about staffing shortages, this is an issue across the country, and therefore the Amendments negotiated and signed by the parties explicitly contemplate and acknowledge shortages in the labor market, stating "the Parties agree and acknowledge that due to labor market conditions and necessary changes to Provider compensation as of the [date of the relevant Amendment], the staffing required to meet the coverage requirements in Exhibit B may not be available and Group may experience resignations." Second Amendment § 4 (ECF No. 37-1 at 64); Third Amendment § 4 (ECF No. 37-1 at 66); Fourth Amendment § 5 (ECF No. 37-1 at 68). Additionally, Holy Cross's complaint that "[the Group]'s costs for clinical providers are unreasonably high because Defendants rely excessively on temporary anesthesia providers ('locum tenens')," FAC ¶ 30(c), is expressly addressed in the Fourth Amendment, which permits the Group to pass on to Holy Cross the cost of temporary staff and locum tenens in order to ensure anesthesia coverage at Holy Cross. *See* Fourth Amendment § 4 (removing the provision of the Agreement that required the Group to pay for temporary staff) (ECF No. 37-1 at 68).

In sum, notwithstanding that other provisions in the Agreement and the Amendments signed by Holy Cross control all of the alleged damages that Holy Cross seeks to recover by way of its antitrust claims, Holy Cross is attempting to attribute them to the Covenants.

4

### III. LEGAL ARGUMENT

**A.    Legal Standard**

As the party invoking the Court's jurisdiction, Holy Cross bears the burden of demonstrating the existence of jurisdiction. *See Hogan v. Kerry*, 208 F. Supp. 3d 1288, 1289 (S.D. Fla. 2016) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998)). In this regard, "[s]tanding is an irreducible minimum necessary under Article III's case-or-controversy requirement." *Kelly v. Harris*, 331 F.3d 817, 819 (11th Cir. 2003). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Importantly, "[a] plaintiff must demonstrate standing separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citation omitted); *see Waterblasting, LLC v. Easy-Kleen Pressure Sys., LTD*, No. 22-14298-CIV, 2023 WL 3778268, at *3 (S.D. Fla. Apr. 11, 2023) ("Because standing is not dispensed in gross, a plaintiff must show standing for each asserted claim and each form of relief sought." (citations omitted)).

As to Holy Cross's claims under the Sherman Act and the Florida Antitrust Act, the Eleventh Circuit has noted, "Federal and Florida antitrust laws are analyzed under the same rules and case law." *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n.11 (11th Cir. 1998); *See, e.g., JES Properties, Inc. v. USA Equestrian, Inc.*, No. 802CV1585T24MAP, 2005 WL 1126665, at *19 (M.D. Fla. May 9, 2005) (noting that, where the federal antitrust claim failed, so too did the Florida antitrust claim), *aff'd*, 458 F.3d 1224 (11th Cir. 2006).

### B. Holy Cross lacks standing to seek monetary damages for its antitrust claims.

Holy Cross lacks standing to recover its three categories of damages because Holy Cross cannot establish that it has suffered an injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision.

#### 1. Holy Cross cannot establish that its injuries are fairly traceable to the challenged conduct.

Holy Cross has not established (and cannot establish) that its three categories of alleged damages are traceable to the conduct at issue in its antitrust claims. For a plaintiff to have standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). The Eleventh Circuit "ha[s] held traceability to be lacking if the plaintiff would have been injured in precisely the same way without the defendant's alleged misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023) (citation omitted). Put simply, "under [Eleventh Circuit] precedents, a plaintiff lacks standing to sue over a defendant's action 'if an independent source would have caused him to suffer the same injury.'" *Id.* at 650–51 (citing *Swann v. Sec'y, Georgia*, 668 F.3d 1285, 1288 (11th Cir. 2012)).

Applying these standards, Holy Cross's antitrust injuries are not fairly traceable to the Covenants, which form the basis of Holy Cross's antitrust claims. *See* FAC ¶¶ 132, 136 (identifying "the noncompete agreements between Defendants and their providers, as well as the nonsolicitation clause," as the contractual provisions underlying the antitrust claims). Turning first to Holy Cross's alleged "higher costs," Holy Cross readily concedes that the Agreement's payment provisions dictate the costs that it pays for Clinicians. *See* FAC ¶ 30 ("The Agreement has imposed unreasonable payment requirements on Holy Cross in numerous respects."); *id.* ¶ 32

6

("Holy Cross does not dispute that it owes the subsidy under the Agreement … ."). Therefore, Holy Cross's alleged damages are the result of the Agreement's payment provisions and not any alleged violation of the antitrust laws. Agreement § III.D ("In consideration for the staffing and provision of Anesthesia Services hereunder, Hospital shall pay to Group an annual amount as set forth in Schedule III.D.") (ECF No. 37-1 at 9); First Amendment § 4 (setting forth costs); Second Amendment § 3 (setting forth "the total compensation paid to the Group for all services described in the Agreement … for the time period August 1, 2023 to August 31, 2023") (ECF No. 37-1 at 64); Third Amendment § 3 (similar for time period September 1, 2023 to December 31, 2023) (ECF No. 37-1 at 66); Fourth Amendment § 3 ("The Parties agree to replace the current financial arrangements in Schedule III.D with the attached III.D.") (ECF No. 37-1 at 68).

Additionally, the volume of staffing provided by the Group to Holy Cross—the alleged injury at issue in Holy Cross's second and third category of damages—is likewise governed by the Agreement. Agreement § II.D ("Group is responsible for scheduling a sufficient number of Providers to provide on-side and on-call coverage during the times and at the staffing levels designated on Exhibit B.") (ECF No. 37-1 at 3–4); Second Amendment § 4 (ECF No. 37-1 at 64); Third Amendment § 4 (ECF No. 37-1 at 66); Fourth Amendment § 5 (ECF No. 37-1 at 68–69). So too is the use of temporary anesthesia providers. *See* Fourth Amendment § 4 (removing the provision of the Agreement that required the Group to provide temporary staff at the Group's expense) (ECF No. 37-1 at 68). Importantly, Holy Cross is a party to the Agreement and Amendments containing these provisions, and a party cannot predicate a claim under Section 1 of the Sherman Act on a contract to which it is a party. *See Patt v. Antech Diagnostics, Inc.*, 2020 WL 5076970, at *4 (C.D. Cal. May 18, 2020) (rejecting the argument that a party can bring a Section 1 claim based on agreement to which it is a party); *see also Swann v. Sec'y, Georgia*, 668

F.3d 1285, 1288 (11th Cir. 2012) ("[A] controversy is not justiciable when a plaintiff independently caused his own injury.").

Further, Holy Cross's own allegations, which the Court accepts as true at this stage, show that its alleged damages are traceable to factors other than the Covenants. For example, Holy Cross admits that its higher costs are caused by the use of temporary anesthesia providers or locum tenens. *See* FAC ¶ 30(c) ("[The Group]'s costs for clinical providers are unreasonably high because Defendants rely excessively on temporary anesthesia providers ('locum tenens') to fill permanent gaps in their staffing at Holy Cross. Locum tenens providers are paid far higher than typical rates for employed providers. These factors have significantly increased the costs of anesthesia services to Holy Cross."). Again, the use of temporary anesthesia providers is specifically addressed in the parties' Agreement, through which Holy Cross agreed to pay for the costs that it is now seeking to recover as antitrust damages. Fourth Amendment § 4 (ECF No. 37-1 at 68). Finally, although Holy Cross complains about injuries it allegedly suffered from cancelled or delayed procedures due to staffing shortages, it also concedes "[t]here is a significant shortage of anesthesia providers nationally, and that shortage is expected to grow." FAC ¶ 27. In fact, the parties specifically recognized the nationwide shortage of anesthesia clinicians in three consecutive separate amendments to the Agreement, which read as follows, and in the process, expressly confirm that Holy Cross has no injury or claim for staffing shortages:

> Notwithstanding any other provision in the Agreement, the Parties agree and acknowledge that due to labor market conditions and necessary changes to Provider compensation as of the [date of the Amendment], the staffing required to meet the coverage requirements in Exhibit B may not be available and Group may experience resignations. Therefore, any deviations in coverage from the requirements of Exhibit B will not constitute a breach of the Agreement … .

Second Amendment § 4 (ECF No. 37-1 at 64); Third Amendment § 4 (ECF No. 37-1 at 66); Fourth Amendment § 5 (ECF No. 37-1 at 68).

In sum, Holy Cross cannot establish the traceability element required to have standing to seek monetary damages for its antitrust claims. The higher costs about which Holy Cross complains are based on the contractual payment provisions to which Holy Cross agreed, not NAPA's allegedly wrongful conduct. Nor are the temporary anesthesia providers and the nationwide labor shortage the result of any wrongful conduct by NAPA. *See* FAC ¶¶ 132, 136 (identifying the Covenants as the allegedly unlawful agreements). In this regard, "a controversy is not justiciable when a plaintiff independently caused his own injury." *Swann*, 668 F.3d at 1288; *see Walters*, 60 F.4th at 650–51 (citation omitted) ("[U]nder [Eleventh Circuit] precedents, a plaintiff lacks standing to sue over a defendant's action 'if an independent source would have caused him to suffer the same injury.'" (citing *Swann*, 668 F.3d at 1288)). And although Holy Cross brings a claim for breach of contract based on some of these provisions, *see* FAC ¶ 149, Holy Cross cannot create standing for its antitrust claims by mixing and matching its alleged injuries and the conduct at issue. *Collins v. Yellen*, 141 S. Ct. 1761, 1780 (2021) ("For purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to "***allegedly unlawful conduct***" by the defendant … ." (emphasis added)); *see Air Methods Corp. v. Altmaier*, No. 4:20-CV-462-AW-MAF, 2021 WL 4955907, at *2 (N.D. Fla. Mar. 24, 2021) ("[A]n injury from one provision cannot provide standing to challenge another.").

2. <u>Holy Cross cannot establish that its alleged injuries will be remedied by a favorable decision.</u>

Holy Cross's alleged injuries are also not redressable by the Court. To establish redressability, Holy Cross must establish a "substantial likelihood that victory in this suit would result" in the relief it desires. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 46 (1976); *KH Outdoor, L.L.C. v. Clay Cnty., Fla.*, 482 F.3d 1299, 1303 (11th Cir. 2007) ("In order for an injury to be redressable, it must be likely, as opposed to merely speculative, that the injury will be

'redressed by a favorable decision.'" (citing *Lujan*, 504 U.S. at 561)). "An interest unrelated to injury in fact is insufficient to give a plaintiff standing. The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000) (citations omitted).

Here, Holy Cross' desired relief would not be remedied by its antitrust challenge to the Covenants. Invalidating the Covenants would not invalidate the Agreement's provisions governing payments or staffing, especially because the Agreement contains a severability clause. Agreement § XV.F ("If any provision of this Agreement is determined to be unenforceable, the remaining provisions of this Agreement will not in any way be affected or impacted, but will remain binding in accordance with their terms.") (ECF No. 37-1 at 26–27). Accordingly, Holy Cross would continue to be liable for any payments owed under the Agreement, which it admittedly negotiated and executed. Thus redressability is absent here.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss for lack of standing Holy Cross' claims for monetary damages under both the Sherman Act and the Florida Antitrust Act. NAPA further requests general relief.

Dated: July 11, 2024.                                        Respectfully submitted,

By: /s/ *Taariq M. Lewis*
Jennifer Lada, Esq.
Florida Bar No. 119247
W. Scott O'Connell, Esq.
(admitted Pro Hac Vice)
Marc L. Antonecchia, Esq.
(admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
Telephone: 212.513.3200
jennifer.lada@hklaw.com

scott.oconnell@hklaw.com
marc.antonecchia@hklaw.com

William M. Katz, Jr., Esq.
(admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP
One Arts Plaza, 1722 Routh Street
Dallas, TX 75201
Telephone: 214.969.1330
william.katz@hklaw.com

Taariq M. Lewis, Esq.
Florida Bar No. 1031385
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
taariq.lewis@hklaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on this 11th day of July, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

　　　　　　　　　　　　　　　　　*s/ Taariq M. Lewis*
　　　　　　　　　　　　　　　　Taariq M. Lewis