UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:24-cv-60315-Leibowitz/Strauss

| | |
|---|---|
| HOLY CROSS HOSPITAL, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN ANESTHESIOLOGY | ) |
| SERVICES OF FLORIDA, INC., | ) |
| AMERICAN ANESTHESIOLOGY, INC., | ) |
| NMSC II, LLC and NORTH AMERICAN | ) |
| PARTNERS IN ANESTHESIA, L.L.P., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**AMERICAN ANESTHESIOLOGY SERVICES OF FLORIDA, INC.'S RESPONSE IN OPPOSITION TO HOLY CROSS'S MOTION TO DISMISS COUNTERCLAIMS AND INCORPORATED MEMORANDUM OF LAW INTRODUCTION**

The Motion to Dismiss Counterclaims ("Motion," ECF No. 58) filed by Counter-Defendant Holy Cross Hospital, Inc. ("Holy Cross") should be denied. Counter-Plaintiff American Anesthesiology Services of Florida, Inc. (the "Group") has far exceeded its *Twombly* obligations to plead "plausible" allegations supporting its breach of contract and tortious interference claims in its Counterclaims filed on July 8, 2024 (the "Counterclaims," ECF 55).

This case is about Holy Cross's admitted breaches of its contractual obligations to the Group by actively recruiting and hiring the Group's team of anesthesiologists and certified registered nurse anesthetists (together, the "Clinicians") in violation of the Non-Solicitation Clause in the parties' Administrative and Clinical Services Agreement, as amended (the "Agreement"). Through that clause, the parties mutually agreed that they would not take any action, directly or

indirectly, to induce each other's employees to leave their employment.

Given the nature of the parties' business collaboration — whereby the Group spent substantial resources to recruit, train, and match personnel to meet Holy Cross's anesthesiology needs and to develop successful relationships with patients and surgeons, among others — the Group's legitimate business interests are readily apparent and favor enforcing the Non-Solicitation Clause between the two companies. Holy Cross's requests that the Court rule on the reasonableness and enforceability of the restrictive covenants — both the Non-Solicitation Clause and noncompete agreements — is premature at this pleading stage. *See, e.g.*, *Crom Corp. v. Ryan Harvey et al.*, 2012 WL 13018540, at * 4 (N.D. Fla. 2012) (denying motion to dismiss breach of contract claim to enforce a restrictive covenant on the grounds that "the existence of a legitimate business interest is an issue of fact" and accordingly, "Defendants' argument for dismissal is inappropriate at this stage"); see *LT's Benjamin Records, Inc. v. Machete Music*, 2010 WL 2573961, at *5 (S.D. Fla. 2010) (stating that "both the Florida courts and the federal courts have found that the issues of whether a business has a legitimate business interest justifying restrictions, and whether the restrictions are reasonable in time, area, and line of business are questions of fact, not of law").

Finally, the Counterclaims also set forth plausible allegations to support the Group's tortious interference claim based on Holy Cross's intentional acts encouraging the Group's Clinicians to violate their employment agreements with the Group. Holy Cross's Motion should be denied in its entirety.

A. **The Group Has Sufficiently Pled That Holy Cross Breached The Non-Solicitation Clause That Protects The Group's Legitimate Business Interests.**

Holy Cross's sole argument for dismissal of the breach of contract counterclaim rests on the argument that the Group has failed to sufficiently plead a legitimate business interest to support

enforcement of the Non-Solicitation Clause. Holy Cross's argument ignores the Group's detailed allegations identifying specific facts supporting the multiple legitimate business interests protected by the Non-Solicitation Clause, as well as governing Florida law recognizing these interests as protectable. Holy Cross's Motion also repeatedly misapplies the applicable legal standard for a motion to dismiss and is improperly asking the Court to make factual determinations at the motion to dismiss stage. For the reasons set forth below, the Court should deny the Motion.

**(1)     Holy Cross is on "notice" of the legitimate business interests the Group seeks to protect via the Non-Solicitation Clause.**

Holy Cross's Motion argues for a heightened standard far beyond the notice pleading required by *Twombly*: it wants the Group to "prove" the existence of one or more legitimate business interests justifying the restrictive covenant (ECF No. 58, pg. 10). But the Supreme Court has made clear that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When ruling on a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Id.* The complaint cannot be dismissed if it pleads "enough facts to state a claim for relief that is plausible on its face." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).[1] That is exactly the situation here.

---

[1] In its Motion, Holy Cross cites to *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1178 (M.D. Fla. 2023), appeal dismissed, No. 23-10623-GG, 2023 WL 3691014 (11th Cir. Apr. 12, 2023) for the proposition that "[r]estrictive covenants are generally unenforceable under Florida law as restraints on trade." Holy Cross, however, did not include the next sentence of the opinion highlighting that reasonable restrictive covenants are not prohibited if reasonable: "But where such covenants are set forth in writing, 'reasonable in time, area, and line of business,' and 'supported by a legitimate business interest' they are not prohibited. § 542.335(1), Fla. Stat." *Id.*

In its Motion, Holy Cross erroneously invites the Court to decide fact issues rather than determine if factual allegations are "plausible." Holy Cross concedes that the Group pled that it had legitimate business interests — such as substantial relationships with its existing customers, patients and clients, and extraordinary and specialized training — that are enumerated under Section 542.335, Florida Statutes (ECF No. 58, pgs. 11, 15). Yet Holy Cross argues that the Group did not provide certain specific facts, details, and evidence regarding the Group's legitimate business interests, and that as such, the Group's claims should be dismissed. Florida law, however, does not require such specificity at the motion to dismiss stage. *See, e.g.*, *Crom Corp.*, 2012 WL 13018540, at * 4; see *LT's Benjamin Records, Inc.*, 2010 WL 2573961, at *5.

Holy Cross's Motion contains only two cases in which a court dismissed a breach of contract claim to enforce a restrictive covenant at the motion to dismiss stage due to a failure to plead a legitimate business interest. Both are distinguishable and support the Group's position. In *Ebbeskov Jankovic, LLC v. Johansen*, Case No. 21-cv-62410, 2022 WL 3681930 (S.D. Fla. May 6, 2022), and *U.S. Alliance Management Corp. v. Airbus Americas Customer Servs., Inc.*, Case No. 19-cv-24066, 2020 WL 13613823 (S.D. Fla. Jan. 30, 2020), the courts dismissed breach of contract claims because the complaints failed to *mention* any legitimate business interest. *See Johansen*, 2022 WL 3681930, at *2-3 (dismissing plaintiff's breach of contract claim because it did not at all plead the existence of a legitimate business interest justifying the restrictive covenant pursuant to Section 542.335); *see U.S. Alliance Management Corp.*, 2020 WL 13613823, at *5 (same). That is not the situation here.

Unlike *Ebbeskov* and *U.S. Alliance Management Corporation*, the Group has pleaded the following legitimate business interests:

> 15.  Among other things, the Non-Solicitation Clause protects the Group's substantial relationships with its existing customers, patients, and clients,

-4-

>which is a legitimate business interest sufficient to justify a restrictive covenant under Florida law. *See* § 542.335(b)(3), Florida Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 3. Substantial relationships with specific prospective or existing customers, patients, or clients").
>
>16.   Moreover, the Non-Solicitation Clause protects the Group's goodwill, which arises from its customer, patient, and client relationships. *See* § 542.335(b)(4), Florida Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 4. Customer, patient, or client goodwill associated with: a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress"; b. A specific geographic location; or c. A specific marketing or trade area.").
>
>17.   Furthermore, the Group has a legitimate business interest in protecting the extraordinary and specialized training the Group has provided to its Clinicians at significant expense. See § 542.335(b)(5), Florida Statutes ("The term 'legitimate business interest' includes, but is not limited to: . . . 5. Extraordinary or specialized training").

(ECF No. 55, ¶¶ 15-17). The Group has gone a step further and described in detail the facts surrounding its legitimate business interests in paragraphs 18 through 29 of the Counterclaims. For example, the Group describes the importance for anesthesia clinicians to have ongoing relationships developed over years with the surgeons and other physicians who perform the procedure (*Id.* at ¶¶ 19-20). The Group also describes the importance of having a core group of trusted Clinicians to avoid "significant disruptions," including surgeons shifting patients to other hospitals (*Id.* at ¶¶ 21-23). All of these detailed facts are taken from Holy Cross's Complaint and thus cannot be disputed at this stage of the litigation. Furthermore, the Group described its extraordinary and specialized training regarding the use of proprietary technology and training regarding best practices (*Id.* at ¶¶ 26-28).

For these reasons, the Court should not be misled by Holy Cross's inaccurate argument that the Counterclaims contain nothing more than "conclusory assertions." The Group has far exceeded its pleading obligation to describe how the Non-Solicitation Clause with Holy Cross protects the Group's substantial relationships with its existing customers, patients, and clients —

no matter how defined — and its extraordinary specialized training, which are legitimate business interests sufficient to justify a restrictive covenant under Florida law (ECF No. 55, ¶¶ 18-29). It is simply disingenuous for Holy Cross to argue that the allegations in the Counterclaims are "entirely conclusory." Credibility of the allegations will be assessed at a later stage of the litigation; but here, assessment of the reasonableness of the allegations is premature, and the Motion must be denied on this basis alone.

### (2) Holy Cross's reliance on case law addressing summary judgment or injunctive relief is misplaced at the pleading stage of this litigation.

Holy Cross's Motion relies on inapposite cases addressing summary judgments or preliminary injunctions that apply different legal standards than the low threshold that applies at the motion to dismiss stage. *See* ECF No. 58, pgs. 10-15; *University of Florida, Board of Trustees v. Sanal*, 837 So. 2d 512 (Fla. 1st DCA 2003) (preliminary injunction); *Vital Pharms., Inc. v. Alfieri*, 23 F. 4th 1282 (11th Cir. 2022) (preliminary injunction); *Passalacqua v. Naviant, Inc.*, 844 So. 2d 792 (Fla. 4th DCA 2003) (preliminary injunction); *Properties of Villages, Inc. v. Kranz*, Case No. 5:19-cv-647, 2020 WL 6270932 (M.D. Fla. Aug. 14, 2020) (preliminary injunction); *Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172 (M.D. Fla. 2023) (summary judgment); *IDMWORKS, LLC v. Pophaly*, 192 F. Supp. 3d 1335 (S.D. Fla. 2016) (preliminary injunction).

Indeed, courts have found that the reasonableness of a restrictive covenant is a fact issue that cannot be determined at the motion to dismiss stage. *Crom Corp.*, 2012 WL 13018540, at *4 (internal citation omitted). As the court recognized in *Benjamin Records*, "both the Florida courts and the federal courts have found that the issues of whether a business has a legitimate business interest justifying restrictions, and whether the restrictions are reasonable in time, area, and line of business ***are questions of fact, not of law***." *LT's Benjamin Records, Inc.*, 2010 WL 2573961, at *5 (emphasis added); *see also Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223,

1237–38 (11th Cir. 2009) ("Whether a non-compete covenant is reasonable or overly broad is a question of fact for the trial court.") (citing *Whitby v. Infinity Radio*, 951 So. 2d 890, 897 (Fla. Dist. Ct. App. 2007) (holding that the trial court erred in granting summary judgment without conducting an evidentiary hearing to receive evidence regarding covenant's reasonableness)); *accord American Standard, Inc. v. Humphrey*, 2007 WL 2852362, at *3 (M.D. Fla. Oct. 2, 2007).

For example, the defendants in *Crom Corporation* argued at the motion to dismiss stage that plaintiff had "failed to identify any specific and substantial relationships which the Plaintiff intends to protect," was "unable to prove that the Defendants used any specific trade secrets or confidential information," and plaintiff could not "prove that it provided extraordinary or truly specialized training to the Defendants." 2012 WL 13018540, at * 5 (N.D. Fla. 2012). The court denied the motion to dismiss because "the existence of a legitimate business interest is an issue of fact, as per the *Benjamin Records* case" and thus "the Defendants' argument for dismissal is not appropriate at this stage." *Id*. Similarly here, Holy Cross's Motion should be denied as premature.

**(3) The Group has adequately and specifically pled sufficient legitimate business interests under governing Florida law.**

In addition to meeting its pleading requirements for the reasons given above, the Group has also identified business interests protected by the Non-Solicitation Clause that are "legitimate" under Florida law. At the outset, Section 542.335(1)(b), Florida Statutes, defines "legitimate business interests" through a non-exhaustive list, meaning that "the subject statute protects a plethora of protected legitimate business interests far beyond those explicitly listed in the subject statute." *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 786 (Fla. 2017). In fact, courts recognize that legitimate business interests vary depending on "the industry context and evidence adduced." *Id.*

Here, the Group and Holy Cross entered into a business collaboration whereby the Group

would spend substantial resources to recruit, train, and match personnel to meet Holy Cross anesthesiology needs and to develop successful relationships with patients and surgeons, among others. To protect its business interests and to prevent unfair competition,[2] the Group entered into a heavily negotiated Agreement with Holy Cross that contains a Non-Solicitation Clause through which the parties mutually agreed that they would not take any action, directly or indirectly, to induce each other's employees to leave their employment. Simply put, if Holy Cross were free to directly hire the Group's Clinicians, and thus avoid paying compensation to eliminate the Non-Solicitation Clause, the Group would not be able to maintain its business. Accordingly, the Non-Solicitation Clause protects a variety of interests, including: (1) the Groups' substantial relationships with its existing customers, patients, and clients; (2) the Group's investment goodwill, which arises from its customer, patient, and client relationships; and (3) the extraordinary and specialized training the Group has provided to its Clinicians at significant expense.

First, the Non-Solicitation Clause protects the Group's investment and development of the substantial relationships between the Clinicians and existing customers, patients, and clients. The Motion fails to meaningfully engage with the Counterclaims' allegations — based on Holy Cross admissions — that the Group has developed significant goodwill with the physicians and other professionals practicing at Holy Cross. As Holy Cross admits, it is important for surgeons and other physicians who practice at Holy Cross to have good relationships with the Group's Clinicians

---

[2] In its Motion (ECF No. 58, pg. 11), Holy Cross argues that because the hospital "has received invaluable benefits from the Group's investment in the clinician's training…" prior to Holy Cross's wrongful solicitation of the Clinicians, the Group cannot be currently harmed by the solicitation. This is non-sensical. Holy Cross did receive invaluable benefits during the entire performance of the Agreement whereby the Group recruited, trained, and matched the Clinicians at Holy Cross. Now Holy Cross wants to reap those benefits and poach the employees directly, and avoid paying the Group's fee.

because "physicians would prefer to use hospital based anesthesiologists they know and trust rather than to work extensively with locum tenens [i.e., temporary] physicians" (ECF No. 52, ¶ 31). In fact, the Group's goodwill with Holy Cross's medical staff is so significant, "[i]f these physicians were forced to immediately work with other anesthesia providers with whom they were not familiar and the replacement anesthesia providers were not familiar with the hospital facilities, this would cause a significant disruption at Holy Cross" (ECF No. 52, ¶ 50).

Recognizing the strong relationships between the Group's Clinicians and the physicians practicing at Holy Cross, the Motion attempts to divert the Court's attention by alleging that the "patients" are the "customers" because they pay for surgery — and therefore "goodwill" relates only to "patient goodwill" (ECF No. 58, pg. 12). In doing so, Holy Cross misses the mark. First, this narrow definition of goodwill is not supported by case law; nor common sense. The Group was hired by Holy Cross, not any patient; indeed, the relevant Agreement is between the Group and Holy Cross and provides for Holy Cross to make certain payments to the Group. Accordingly, Holy Cross and its agents, including its medical staff, employees, and representatives, are the Group's customers; they receive and benefit from the services provided by the Group. All of this shows that "goodwill" is not limited only to patients treated at Holy Cross. It includes the substantial "goodwill" that the Group has developed with the physicians and others who treat patients at Holy Cross.

Additionally, as Holy Cross has recognized, referral sources are often protected as legitimate business interests in Florida. For example, in *Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, the court held that a medical practice's investment in developing a podiatry practice in the keys and recruiting the defendant for that practice constituted legitimate business interests "with regard to its patient base, referral doctors, specific prospective and existing patients,

and patient goodwill." 891 So.2d 591, 593-94 (Fla. 3d DCA 2004); s*ee also Ansaarie v. First Coast Cardiovascular Inst., P.A.*, 252 So. 3d 287, 289-92 (Fla. 1st DCA 2018) (affirming preliminary injunction to protect legitimate business interests in plaintiff's substantial relationships with specific prospective or existing patients and referral sources as well as legitimate interests in the customer and patient goodwill it had established in the area); *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 782 (Fla. 2017) (concluding that home health services referral sources may be a protected legitimate business interest).

Second, the Non-Solicitation Clause protects the Group's goodwill, which arises from its customer, patient, and client relationships. Goodwill is a recognized legitimate business interest in Florida. *See* § 542.335(b)(4), Fla. Stat.; *7-Eleven, Inc.* v. *Kapoor Bros. Inc.*, 977 F. Supp. 2d 1211, 1228-29 (M.D. Fla. 2013) (granting a preliminary injunction to 7-Eleven to protect its customer and client goodwill and enjoining defendant from continuing to operate a store under the 7-Eleven name); *USI Insurance Services of Florida, Inc. v. Pettineo*, 987 So. 2d 763, 766 (Fla. 4th DCA 2008) (enforcing a non-compete that sought to protect substantial relationships with specific prospective or existing customers and goodwill associated with an ongoing business). The Florida Supreme Court "has defined goodwill as the advantage or benefit a business has beyond the value of its property and capital." *Thompson v. Thompson*, 576 So. 2d 267, 268 (Fla. 1991) (internal citation omitted). That is exactly what the Group seeks to protect, including but not limited to its substantial investment in the development of its anesthesiology group, its maintenance of its reputation in the community, and the investment in recruiting, training, and retaining the Clinicians.

Third, the Non-Solicitation Clause protects the extraordinary and specialized training the Group has provided to its Clinicians at significant expense to build a competent and specialized

team. The Group has heavily invested and built a group of Clinicians that are highly skilled, specialized team that is trusted by the hospitals, the patients, and by other physicians. Florida courts have enforced contractual provisions like the Non-Solicitation Clause here. For example, in *Balasco v. Gulf Auto Holding, Inc.*, 707 So. 2d 858, 859 (Fla. 2d DCA 1998), the court affirmed the issuance of a temporary injunction to enforce a non-solicitation agreement because it furthered the legitimate business interests of promoting productivity and maintaining a competent and specialized sales team. Such a finding goes hand in hand with the protection of a company's investment, which the Group has pleaded as a legitimate business interest.

Holy Cross also contends that the Group has failed to sufficiently allege facts supporting a legitimate business interest in training the Clinicians. Holy Cross cites to inapplicable case law at the summary judgment and preliminary injunction stages where courts found that the <u>evidence</u> was insufficient to support allegations that the training received was specialized or unique. *See Blue-Grace Logistics LLC*, 653 F. Supp. 3d at 1178-81 (denying Blue-Grace's motion for summary judgment); *see Pophaly*, 192 F. Supp. 3d at 1341-42 (denying request for preliminary injunction). In contrast, this case is only at the pleading stage. To the extent Holy Cross argues that the training received by the Clinicians is "common in the industry," a motion to dismiss is not the proper ground to advance such fact-intensive arguments.

Lastly, Holy Cross inaccurately contends that the Counterclaims are devoid of any "facts" that would indicate "any prospect of any future competition between American Anesthesiology and Holy Cross" and there are "no facts to indicate … unfair competition" (ECF No. 58, pg. 14). The Counterclaims are premised on Holy Cross's "blatant violation" of the Agreement, inducing the Group's Clinicians to cease their employment with the Group, encouraging the Clinicians to breach their employment agreements, and resulting in substantial damages. In fact, an estimated

twenty-nine Clinicians have accepted Holy Cross's employment offer thus far — which obviously means they no longer intend to work for the Group. There is no doubt that the Group and Holy Cross are currently competing to employ the Clinicians, and that the Group brought the Counterclaims seeking damages against Holy Cross for its actions.

### (4) The decisions in Syracuse on a preliminary injunction request lacks relevance.

Holy Cross's Motion references a decision in Syracuse, New York, where the court, applying New York law, denied a motion for a preliminary injunction. However, Holy Cross relies on a decision that not only applied law from a different state but also used a legal standard, which is more stringent than the low threshold applicable at the motion to dismiss stage. The U.S. District Court for the Southern District of New York acknowledged that the two motions call for different standards of proof:

> A motion for a preliminary injunction requires a different standard of proof than a motion to dismiss. …. "[U]nlike a preliminary injunction motion, dismissal pursuant to Rule 12(b)(6) is not based on whether Plaintiff is likely to prevail, and all reasonable inferences must be viewed in a light most favorable to Plaintiff." Id. "In opposing a motion to dismiss, Plaintiff is not required to prove her case; she must simply establish that the allegations in the Complaint are sufficient to render her claims plausible." Id. (citing Iqbal, 490 F.3d at 158) (internal citation omitted). A plaintiff seeking injunctive relief has a "heavier burden" than a plaintiff "bears in pleading the plausible claim necessary to avoid dismissal." New Hope Family Servs., Inc. v. Poole, 966 F.3d 145, 165 (2d Cir. 2020).

*Council for Responsible Nutrition v. James*, No. 24-CV-1881 (ALC), 2024 WL 2137834, at *2 (S.D.N.Y. May 13, 2024). Accordingly, the decision in Syracuse New York should be given no weight in this Court's decision at the dismissal stage.

**B.     The Group Stated Plausible Claims For Tortious Interference With Contract Against Holy Cross.**

The Group stated plausible claims for tortious interference with contract against Holy Cross sufficient to put Holy Cross on "notice" of the claims. To state a claim for tortious

-12-

interference with contract, plaintiff must plead: (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff. *Int'l Sales & Serv., Inc. v. Austral Insulated Prods. Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). The Counterclaim alleges each of these elements and therefore states a tortious interference claim as to the non-compete agreements. Holy Cross challenges the tortious interference claims on three grounds—none of which supports dismissal.

### (1) Holy Cross's defense based on justification and privilege is a merits issue that cannot be resolved at this stage of the litigation.

Holy Cross contends that the Group had the burden, at the pleading stage, to explain why Holy Cross's interference with the Group's noncompete agreements with the Group's Clinicians was not "justified." Holy Cross alleges that interfering with the noncompete was in its "own economic interest," and therefore, Holy Cross's conduct is "non-actionable" unless the Group shows "malice." Holy Cross also argues that because it is not a "stranger" to the relationship between the Group and its Clinicians, Holy Cross may interfere with the Clinician's employment agreement with the Group (ECF No. 58, pgs. 20-23).

Holy Cross's arguments are merits issues, based on its affirmative defenses, that cannot be addressed via a motion to dismiss. Florida law recognizes that some actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged, and a party's interference with another's business relationship is, therefore, justified when the defendant is not a stranger to a business relationship or if the defendant has any beneficial or economic interest in, or control over, that relationship. *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202 (S.D. Fla. 2015). But this is a fact-intensive determination that cannot be made at the motion to dismiss

stage of this case, especially because Holy Cross has, in fact, used improper means. Furthermore, as stated in the Group's Counterclaims, the limited privilege to interfere with a business relationship "does not encompass the purposeful causing of a breach of contract." *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001) (applying Florida law) (internal citations omitted); *see* ECF No. 55, ¶ 53. Because Holy Cross has purposefully caused the Group's Clinicians to breach their contracts with the Group, Holy Cross cannot rely on any privilege.

In any event, "[b]ecause the assertion of a privilege to interfere in an otherwise protected business relationship is an affirmative defense, '[t]his privilege argument ... is unavailing on a motion to dismiss.'" *Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1239 (S.D. Fla. Jan. 6, 2015); *Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1161 (11th Cir. 2001) ("[After] a plaintiff pleads and proves a prima facie case for tortious interference, the burden is on the defendant to avoid liability by showing his action is privileged[,]" and "whether an action is privileged is a jury question."); *Lakeland Reg'l Med. Ctr., Inc. v. Astellas U.S. LLC*, 2011 WL 3035226, at *11 (M.D. Fla. July 25, 2011) ("Justification or privilege to interfere with a contract is an affirmative defense to a tortious interference action. However, the mere presence of a possible affirmative defense, which has not yet been proven, does not present a basis for the dismissal of this claim.") (internal citation omitted).

Holy Cross further contends that the Group has not set forth facts sufficient to show that Holy Cross engaged in improper methods of interference. In doing so, Holy Cross cites the element for a claim of "disparagement." (ECF No. 58, pg. 23). Holy Cross misses the point. The Group has brought a tortious interference with contractual relationship claim against Holy Cross; not a claim for disparagement. In addition, the Group has set forth detailed facts about Holy

Cross's improper interference and has met its initial pleading burden. *See, e.g.*, *Crom Corp.*, 2012 WL 13018540, at *9 (N.D. Fla. Nov. 29, 2012) (finding a claim for tortious interference with a contractual relationship sufficiently pled when the complaint alleged (1) the Plaintiff had an employment relationship with [employee], (2) that [defendant] had knowledge of this employment relationship; (3) that [defendant] intentionally interfered with this employment relationship, and (4) that the Plaintiff may have been damaged by such actions).

**(2)       The Counterclaims set forth plausible allegations of "specific intent."**

Holy Cross's final argument shows the misleading nature of its Motion. According to Holy Cross, there are no facts in the Counterclaims alleging that Holy Cross knew of the noncompetes or that Holy Cross "specifically desired to disrupt American Anesthesiology's relationship" with the Clinicians (ECF 58, pg. 25). But the Group specifically pled that "upon information and belief, after this lawsuit was filed, Holy Cross engaged legal counsel for the individual Clinicians and encouraged them to breach their individual noncompete agreements with the Group by representing to them that their noncompete agreements would not be upheld, and that the instant litigation will settle. Holy Cross has made these dubious representations to induce the Clinicians to leave the employ of the Group;" and that "[t]he actions of Plaintiff constitute an intentional and unjustified interference with the business relationship between the Group and its Clinicians" (ECF 55, ¶¶ 51-52). Moreover, the Group specifically pled that on February 26, 2024 — the same day Holy Cross filed this action —Holy Cross issued an email to its medical staff referencing a dispute with the Group, which included the following statement: "Holy Cross has decided to offer employment to NAPA's anesthesia providers." In that same message, Holy Cross indicated that it was suing for alleged violations of federal and state antitrust law; that same day, Holy Cross delivered letter to the Clinicians, that annexed Holy Cross's compensation policy, benefits guide,

professional expense reimbursement policy, paid time off policy, and proposed employment agreement (ECF 55, ¶¶ 31-32). In sum, the Counterclaim specifically addresses Holy Cross's blatant, specific intent to encourage the Clinicians to breach their employment agreements with the Group.

**C.    Alternatively, the Group Requests Leave to File Amended Counterclaims.**

If the Court were to find that the Counterclaims were deficient in any way, the Group moves for leave to amend the counterclaims. Leave to amend should be "freely given when justice so requires." Fed. R. Civ. P 15(a); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). At this early stage of the litigation, allowing the Group to amend the Counterclaims to cure any perceived deficiencies will neither require Holy Cross to expend resources to conduct additional discovery, nor delay the resolution of the dispute. Accordingly, if the Court determines the Counterclaims fail to state one or more claims, the Group respectfully requests leave to file an amended pleading.

### Conclusion

For the foregoing reasons, Counter-Plaintiff American Anesthesiology of Florida, Inc. requests that Court deny Holy Cross's Motion to Dismiss Counterclaim-Plaintiff's Amended Counterclaims, or alternatively grant leave to the Group to file amended counterclaims. The Group further seeks general relief.

Dated: August 5, 2024                                                  Respectfully submitted,

By: /s/ *Jennifer Lada*
Jennifer Lada, Esq.
Florida Bar No. 119247
W. Scott O'Connell, Esq.
(admitted Pro Hac Vice)
Marc L. Antonecchia, Esq.
(admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, NY 10019
Telephone: 212.513.3200
jennifer.lada@hklaw.com
scott.oconnell@hklaw.com
marc.antonecchia@hklaw.com

William M. Katz, Jr., Esq.
(admitted Pro Hac Vice)
HOLLAND & KNIGHT LLP
One Arts Plaza, 1722 Routh Street
Dallas, TX 75201
Telephone: 214.969.1330
william.katz@hklaw.com

Taariq M. Lewis, Esq.
Florida Bar No. 1031385
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: (305) 374-8500
taariq.lewis@hklaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that on this 5th day of August, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

*s/ Jennifer Lada*
Jennifer Lada
